AMOCO OIL COMPANY v KRAFT

Docket No. 78-783. Submitted November 22, 1978, at Detroit.—Decided March 20, 1979.

Edmund and Margaret Kraft entered into a lease agreement with Standard Oil Company in 1957. The lease gave Standard Oil a fixed price option to buy the leased premises for $60,000 and a right of first refusal to buy the property for the amount contained in any bona fide offer made by a third party. The lease was for ten years and could be renewed at the lessee's option for two additional terms of five years each. In 1970, after the lease had been extended for five years by Standard Oil and Standard Oil had assigned its interest under the lease to Amoco Oil Company, the Krafts notified Amoco of a bona fide offer from Richard and Lynn Yezbick to purchase the leased premises for $165,000. Amoco declined to exercise its right of first refusal and the property was sold to the Yezbicks. After having extended the lease for its final five-year term, Amoco in 1977 notified the Krafts that it intended to exercise its fixed price option and purchase the property for $60,000. The Krafts refused to convey the property and Amoco brought an action in Macomb Circuit Court, for specific performance, contending that the two options remained independently operative throughout the entire term of the lease and the failure to exercise the first refusal option upon receiving notice of the Yezbick's offer in excess of the fixed price had no effect on and did not extinguish plaintiffs' rights under the fixed price option. Defendants claim that the fixed price option was extinguished when Amoco received notification of a bona fide offer higher than the fixed price but refused to exercise its first refusal option and thus allowed the property to be sold to a third party for a price in excess of the fixed price. Summary judgment for defendants, Robert J. Chrzanowski, J. Plaintiff appeals. *Held:*

1. The language of the lease clearly indicates that the parties

References for Points in Headnotes

[1] 17 Am Jur 2d, Contracts §§ 1, 240, 244.
[2] 71 Am Jur 2d, Specific Performance §§ 145, 146.
[3] 71 Am Jur 2d, Specific Performance § 4.

intended to create alternative options of equal stature. There was nothing in the contract to show that the parties intended to make the first refusal option dependent on the fixed price option or to fix a ceiling price on the value of the leasehold. Furthermore, it is more reasonable to interpret the contract to hold that both options continue to be viable until one of them ceases to be merely a contingent interest and instead becomes a vested right, at which time the nonvested option is extinguished.

2. A lessee who declines to exercise his option to purchase property for $60,000 during the first 13 years of a 20-year lease, and then knowingly allows the leasehold to be sold to another for $165,000 by declining to exercise its alternative first refusal option, is certainly not acting according to the principles of equity and fair dealing when in the twentieth and last year of the lease it seeks to reassert its fixed price option and buy the property for $60,000, a price approximately one-third of the leasehold's fair market value.

Affirmed.

1. CONTRACTS — CONSTRUCTION — INTENT OF PARTIES.

The primary rule of construction in construing contracts is to ascertain the intent of the parties.

2. CONTRACTS — FIXED PRICE OPTIONS — LEASES — BONA FIDE PURCHASERS — WAIVER — SPECIFIC PERFORMANCE.

A lessee waived its right to exercise its fixed price option and may not seek to enforce the option by specific performance in a dual option lease situation where both options were of equal stature and where the lessee had full knowledge of a bona fide purchase offer by a third party in excess of the fixed price yet failed to exercise either its fixed price option or its first refusal option and thus allowed the leasehold to be sold for a price in excess of the fixed price.

3. SPECIFIC PERFORMANCE — EQUITY — CLEAN HANDS.

Specific performance is an equitable remedy and the maxim "he who comes into equity must come with clean hands" is applicable; therefore, a lessee who knowingly allows the real estate on which he had a lease with a dual option of purchase at a fixed price or on a first refusal basis to be sold for a price greatly in excess of the fixed price and then later seeks to divest the buyer of the property by offering to pay the fixed price is not acting equitably and is not entitled to specific performance.

*Nunneley, Nunneley, Hirt & Rinehart, P.C.,* for plaintiff.

*Donald E. Mather,* for defendants.

Before: D. C. RILEY, P.J., and BRONSON and T. GILLESPIE,* JJ.

PER CURIAM. The sole issue in this case is the construction to be given a dual option lease granting the lessee a fixed price option and a first refusal option.

On May 1, 1957, defendants Edmund and Margaret Kraft entered into a lease arrangement with plaintiff Amoco Oil Company's predecessor in interest, Standard Oil. The lease gave the lessee, Standard Oil, a fixed price option to buy the leased premises for $60,000 and a right of first refusal to buy the property for the amount contained in any bona fide offer made by a third party. The lease was for a ten-year term commencing December 13, 1957, and could be renewed at the lessee's option for two additional terms of five years each.

In 1970, after Standard Oil had previously extended the lease for an additional five-year term, the Krafts notified plaintiff that they had received a bona fide offer from defendants Richard and Lynn Yezbick to purchase the leased premises for $165,000. Plaintiff declined to exercise its right of first refusal, and the property was sold to the Yezbicks. After having extended the lease for its final five-year term, plaintiff in 1977 notified defendants that it intended to exercise its fixed price option and purchase the property for $60,000. Defendants refused to convey the property and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiff commenced this action for specific performance.

Defendants claim that the fixed price option was extinguished when plaintiff received notification of a bona fide purchase offer higher than the fixed price but refused to exercise its first refusal option and thus allowed the property to be sold to a third party for a price in excess of the fixed price. Plaintiff contends that the two options remained independently operative throughout the entire term of the lease and the failure to exercise the first refusal option upon receiving notice of a third party's bona fide purchase offer in excess of the fixed price had no effect on and did not extinguish plaintiff's rights under the fixed price option. The trial court agreed with defendants' interpretation of the contract and granted their motion for summary judgment. Plaintiff appeals as of right.

In construing contracts, the primary rule of construction is to ascertain the intent of the parties. *Klever v Klever,* 333 Mich 179; 52 NW2d 653 (1952), *McIntosh v Groomes,* 227 Mich 215; 198 NW 954 (1924). The language of the lease[1] clearly

---

[1] "Lessee shall have, and is hereby given, the option of purchasing said premises, buildings, fixtures, equipment, machinery and appliances included in this lease, for the sum of Sixty Thousand and No/ 100 Dollars ($60,000.00), provided Lessee shall give Lessor notice in writing of its election to exercise said option of purchase at least thirty (30) days prior to the expiration of this lease, or at least thirty (30) days prior to the expiration of any extension period, if this lease be extended, it being understood that in no event may this option be exercised prior to the end of first year of original term. If any part of the demised premises shall be taken by right of eminent domain or by any conveyance in lieu thereof or in connection therewith, the purchase price set forth herein, if the purchase option is exercised, shall be reduced in the same proportion that the area immediately prior to such taking is reduced by the taking. It is further understood that if the Lessor or the Lessor's heirs, executors, grantees, or assigns, or successors or assigns at any time during the term of this lease or any extension thereof, receives a bona fide offer to purchase said premises or any property which includes the premises, and said buildings, fixtures, equipment, machinery and appliances and desires to sell said premises, buildings, fixtures, equipment, machinery and appliances,

indicates that the parties intended to create alternative options of equal stature. Under plaintiff's interpretation of the contract, however, the first refusal option would cease to be an independent option and instead be transformed into a secondary option subordinate to the fixed price option. Plaintiff's interpretation would freeze the value of the leasehold at the amount of the fixed price option. No one would be willing to purchase the property for a higher price than the fixed price with the knowledge that he could lose his investment and be divested of the property if plaintiff decided to purchase the property at the lower fixed price. This being the case, plaintiff would never have occasion to exercise its first refusal option, and it would be rendered virtually meaningless.[2] We find nothing in the contract to show that the parties intended to make the first refusal option

or any part thereof under the terms of said offer, Lessor agrees to give Lessee sixty (60) days notice in writing of such bona fide offer, setting forth the name and address of the proposed purchaser who has made the offer, the amount of the proposed purchase price, and all other terms and conditions of such offer, and the Lessee shall have the first option to purchase the demised premises by giving written notice to the Lessor of its intention to purchase within said sixty (60) day period at the same price and on the same terms of any such proposal, it being understood that in the event Lessee does not give notice of its intention to exercise its option to purchase said premises within said period, this Lease and all of its terms and conditions shall nevertheless remain in full force and effect and the Lessor and any purchaser or purchasers of the demised premises shall be bound thereby, and in the event said premises are not sold for any reason pursuant to the bona fide offer set forth in the notice, the Lessee shall have, upon the same conditions of notice, the continuing first option to purchase the said premises upon the terms of any subsequent bona fide offer or offers to purchase."

[2] In fact, under plaintiff's interpretation, the first refusal option would only be viable if the market value of the leasehold was less than the fixed price. Although the fact of whether the market value is greater than or less than the fixed price might be determinative in plaintiff's decision to exercise its fixed price option or wait for an offer lower than the fixed price and exercise its first refusal option, the fixed price option was not meant to limit the amount of offers or affect the very viability of the first refusal option as opposed to the advisability of its use.

dependent on the fixed price option or to fix a ceiling price on the value of the leasehold. Therefore, plaintiff's interpretation of the contract cannot stand. See *Manasse v Ford,* 58 Cal App 312; 208 P 354 (1922), *Texaco, Inc v Rogow,* 150 Conn 401; 190 A2d 48 (1963).

Conversely, under defendants' interpretation of the contract, both options continue to be viable until one of them ceases to be merely a contingent interest and instead becomes a vested right,[3] at which time the nonvested option is extinguished. Since defendants' interpretation of the contract keeps both options independent and viable, it is the more reasonable interpretation of the contract.

There is another factor which militates against plaintiff's position. Plaintiff seeks specific performance of the fixed price option. Specific performance is an equitable remedy and as in all equitable remedies the maxim, he who comes into equity must come with clean hands, applies. A lessee who declines to exercise his option to purchase the property for $60,000 during the first 13 years of a 20-year lease, and then knowingly allows the leasehold to be sold to another for $165,000 by declining to exercise its alternative first refusal option, is certainly not acting according to principles of equity and fair dealing when in the twentieth and last year of the lease it seeks to reassert its fixed price option and buy the property for $60,000, a price approximately one-third of the leasehold's fair market value. See *Shell Oil Co v Jolley,* 130 Vt 482; 296 A2d 236 (1972).

---

[3] An option becomes vested when the conditions and procedures specified in the contract are complied with in such a manner as to give the lessee an immediate right to exercise the option, *i.e.,* for the first refusal option plaintiff is given notice of a bona fide offer to purchase from a third party, for the fixed price option the lessee notifies the lessor at least 30 days prior to the termination of the contract that he intends to purchase the property for the contract price.

The trial court did not err in granting defendants' motion for summary judgment.

Affirmed.