RYOTI v PAINE, WEBBER, JACKSON & CURTIS,
INCORPORATED

Docket No. 78512. Submitted February 7, 1985, at Lansing.—Decided
    May 8, 1985.

   Ronald P. Ryoti and Jodanne Ryoti brought an action for wrong-
   ful termination of employment in Oakland Circuit Court
   against Paine, Webber, Jackson & Curtis, Incorporated and L.
   Wallace Bruce, seeking damages which allegedly resulted from
   the wrongful discharge of plaintiff Ronald Ryoti from his
   employment with the corporate defendant. Defendants moved
   for accelerated judgment on the basis that plaintiff Ronald
   Ryoti had signed an agreement that any dispute between the
   corporate defendant, a member of the New York Stock Ex-
   change, and Ronald Ryoti would be submitted to an arbitration
   panel selected by the New York Stock Exchange. Plaintiffs
   opposed the motion for accelerated judgment on the basis that
   the arbitration agreement was an unenforceable adhesion con-
   tract, since plaintiff Ronald Ryoti was required to sign the
   arbitration agreement before he could be registered with the
   New York Stock Exchange, such registration being a prerequi-
   site for his employment with the corporate defendant. Plaintiffs
   further argued that, since the discharge from employment was
   contrary to public policy, the dispute was not a proper subject
   for arbitration, that the arbitration panel selection process
   denied plaintiff Ronald Ryoti a fair and impartial decision
   maker and due process, and that, because plaintiff Ronald
   Ryoti did not sign the arbitration agreement until two weeks
   after he had begun his employment, the arbitration agreement
   was unenforceable by reason of the fact that it was unsup-
   ported by consideration on the part of the corporate defendant.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17 Am Jur 2d, Contracts § 240 *et seq.*

[2, 3, 5] 5 Am Jur 2d, Arbitration and Award § 54.

[2, 3] 53 Am Jur 2d, Master and Servant § 48.3.

[2, 4] 73 Am Jur 2d, Stock and Commodity Exchanges § 11.

[3] Modern status of rule that employer may discharge at-will em-
    ployee for any reason. 12 ALR4th 544.

[4] 5 Am Jur 2d, Arbitration and Award § 84 *et seq.*

[5] 53 Am Jur 2d, Master and Servant §§ 14, 18.

The trial court, Fred M. Mester, J., granted defendants' motion for accelerated judgment. Plaintiffs appealed. *Held:*

1. A contract is an unenforceable contract of adhesion where it is shown that the party having a disproportionate greater bargaining power has imposed contract provisions on the other party and that the provisions imposed are not substantively reasonable. While plaintiffs made a sufficient showing of the first prong of the test, in that the signing of the arbitration provision was a prerequisite to plaintiff Ronald Ryoti's securing the employment with the corporate defendant, plaintiffs failed to make a sufficient showing as to the second prong of the test, since the New York Stock Exchange's arbitration procedures cannot be said to be inherently unreasonable and there was no showing of actual unfairness in the application of those procedures in these particular circumstances.

2. The fact that wrongful discharge from employment is contrary to the stated public policy of this state does not mean that a claim of wrongful discharge is not a proper subject for resolution through contractually mandated arbitration.

3. The fact that the composition of the arbitration panel is determined by the New York Stock Exchange does not deprive plaintiff Ronald Ryoti of a fair and impartial decision maker or due process, since the procedures for selection followed by the stock exchange seem fair and impartial and the rules for the arbitration process sufficiently meet due process standards.

4. The agreement to arbitrate does not fail for want of consideration merely because the agreement was signed two weeks after employment commenced, since plaintiff Ronald Ryoti was aware at the time he accepted the employment of the necessity of signing the agreement.

Affirmed.

1. CONTRACTS — ADHESION CONTRACTS.

A two-pronged test is applied for determining whether a contract is one of adhesion and unenforceable: (1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?, and (2) Is the challenged term substantively reasonable?; even if the contract is adhesive under the first prong, the challenged term is still enforceable if it is substantively reasonable and not oppressive or unconscionable.

2. CONTRACTS — ADHESION CONTRACTS — ARBITRATION — NEW YORK STOCK EXCHANGE — ACCELERATED JUDGMENT.

A provision in an employment contract between a securities

brokerage firm and an employee registered with the New York Stock Exchange requiring submission of any dispute to an arbitration panel selected by the stock exchange is not an unenforceable contract of adhesion in the absence of a showing of actual unfairness, since the procedures employed by the stock exchange cannot be said to be so presumptively unfair as to be unreasonable; absent evidence of actual unfairness in the operation of the stock exchange's arbitration tribunal, accelerated judgment is properly granted in an employee's employment termination suit which seeks to avoid arbitration on the basis that a provision in the employment contract requiring arbitration under New York Stock Exchange arbitration procedures is a contract of adhesion and unenforceable.

3. CONTRACTS — DISCHARGE FROM EMPLOYMENT — ARBITRATION — PUBLIC POLICY.

The question of whether a particular discharge from employment falls within this state's recognized state policy of affording relief on public policy grounds to a discharged employee is a proper question to be settled on the merits by arbitration pursuant to a contractually mandated arbitration agreement.

4. CONTRACTS — ARBITRATION — IMPARTIAL ARBITRATION TRIBUNALS — DUE PROCESS — NEW YORK STOCK EXCHANGE.

The fact that the New York Stock Exchange determines the composition of the arbitration panel which hears disputes between its member firms and the employees of those firms who are registered with the exchange does not in and of itself deny an employee of a fair decision maker or due process, since the exchange's arbitration tribunals seem fair and impartial and the exchange's rules governing arbitration sufficiently meet due process standards.

5. CONTRACTS — ARBITRATION — ARBITRATION AGREEMENT — CONSIDERATION — FAILURE OF CONSIDERATION.

An agreement to submit employment disputes to arbitration signed by an employee after commencing his employment is not unenforceable on the basis of failure of consideration on the part of the employer where, at the time employment commenced, the employee was aware that his employment was conditioned upon executing such an arbitration agreement.

*Kizer & Reader* (by *David J. Reader*), for plaintiff.

*Butzel, Long, Gust, Klein & Van Zile* (by *George*

*H. Zinn, Jr.,* and *Carole M. Crosby),* for defendants.

Before: DANHOF, C.J., and T. M. BURNS and BEASLEY, JJ.

PER CURIAM. This is an action for wrongful termination of employment. Plaintiff Ronald Ryoti worked for defendant Paine, Webber, Jackson & Curtis, Inc., and was registered with the New York Stock Exchange. To become registered with the exchange, plaintiff Ronald Ryoti had to sign an arbitration agreement which stated, in part, that any dispute between members of the exchange must be submitted to an arbitration panel which is selected by the exchange. While plaintiff Ronald Ryoti signed this agreement at work, he had the opportunity to take it home and review it. He also took classes in which this agreement was explained before becoming registered with the exchange. Plaintiff Ronald Ryoti argued that the agreement was a contract of adhesion and, therefore, unenforceable. The lower court held a hearing pursuant to GCR 1963, 116.3, and found that the arbitration agreement was valid. The lower court granted accelerated judgment in favor of defendant. Plaintiffs now appeal as of right.

Plaintiffs first argue that the lower court erred in finding that the agreement to arbitrate was not a contract of adhesion. Plaintiffs rely on *Hope v Superior Court of Santa Clara County,* 122 Cal App 3d 147; 175 Cal Rptr 851 (1981), in which an identical arbitration agreement with the New York Stock Exchange was found to be a contract of adhesion. In *Hope,* the Court found that the agreement was offered on a take-it or leave-it basis, that the bargaining strength of the brokerage firm was patently greater than that of the employee and

that the provision for arbitration was unconscionable in that the arbitration body was so associated with a party to the contract that it was presumptively biased in favor of that party. We initially note that this state uses a similar standard for determining whether a contract is adhesive. In *Barck v Grant State Bank,* 137 Mich App 440, 445-446; 357 NW2d 872 (1984), this Court stated the standard we must apply:

"Plaintiffs' second argument is that, even if the challenged clause of the mortgage agreement does not violate MCL 438.31c(2); MSA 19.15(1c)(2), it is unenforceable because the agreement was a contract of adhesion. The two-pronged test for determining whether a contract is one of adhesion and unenforceable is:
" '(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?; (2) Is the challenged term substantively reasonable?' *Allen v Michigan Bell Telephone Co,* 18 Mich App 632, 637; 171 NW2d 689 (1969), *lv den* 383 Mich 804 (1970).
Even if the contract is adhesive under the first prong, still the challenged term is enforceable if it is substantively reasonable and not oppressive or unconscionable. *Allen, supra,* p 638; *Brown v Siang,* 107 Mich App 91, 107; 309 NW2d 575 (1981)."

As in *Barck,* plaintiffs in the instant case raised a genuine issue of material fact as to whether the arbitration agreement with the New York Stock Exchange was adhesive. It is undisputed that, if plaintiff Ronald Ryoti wished to be employed with defendant, he had to sign the agreement. Plaintiffs, however, have failed to make a showing that evidence existed making the substantive reasonableness of the arbitration agreement a genuine issue.

In a similar case, the Court in *Drayer v Krasner,* 572 F2d 348, 359-360 (CA 2, 1978), found that the New York Stock Exchange's arbitration tribunals were not so unfair as to be invalid under antitrust laws:

"We do not think that, absent evidence of actual unfairness in the operation of the NYSE arbitration tribunals, *cf. Paramount Famous Lasky [Corp v United States,* 282 US 30, 35-36; 51 S Ct 42; 75 L Ed 145 (1930)], their composition is so improper as to invalidate the program under the antitrust laws. The mere fact that the three members not engaged in the securities business are drawn from a panel appointed by the Chairman of NYSE does not reflect upon their fairness in a dispute between a member and a registered representative; the arduous and generally thankless task of acting as an arbitrator represents rendition of a service rather than receipt of a perquisite. Such difficulty as exists comes from the required presence of a member of NYSE and another person 'engaged in the securities business,' who, of course, could be a registered representative but apparently rarely is. The Special Study [2 Report of Special Study of Securities Markets, pp 559-561 (1963)] noted the composition of the arbitration tribunal in controversies between members and nonmembers without objection. It also noted that for the years 1957-1961, the claimant had prevailed in 53 cases and had lost in 69.[13] Registered representatives have a trade association, the Association of Investment Brokers, see *Jacobi [v Bache & Co, Inc,* 520 F2d 1231, 1235 (CA 2, 1975)]; presumably the Association would have complained to the SEC if it believed the arbitration procedure was working unfairly. On what we have before us we cannot say that NYSE's compulsory arbitration procedure for disputes between members and registered representatives was so far beyond the area of permissible self-regulation as to violate the rule of reason.

---

[13] Five of these decisions were in disputes between members, allied members, and member organizations. Aside from these cases, most claimants were nonmembers. Special Study, *supra,* at 560. Focusing on the record for the years 1960-61, the Commission noted the

impartiality of both the arbitration director and the arbitrators. *Id.,* at 561.

"Eight of the controversies during the period covered, not included in these figures, were between firms and registered representatives. The Special Study does not indicate how these were decided."

Similarly, we find the reasoning in *Parr v Superior Court of San Mateo,* 139 Cal App 3d 440; 188 Cal Rptr 801 (1983), persuasive on this issue. In *Parr,* the court noted that there was a presumptive bias against the New York Stock Exchange's arbitration proceeding but that the fairness of the exchange's rules governing arbitration rebutted this presumption. Likewise in the instant case, we find that the procedures employed by the exchange at least possess minimum levels of integrity and therefore any presumption of bias is rebutted.[1] Therefore, absent evidence of actual unfairness in the operation of the New York Stock Exchange's arbitration tribunals, we find that the arbitration agreement plaintiff Ronald Ryoti signed is valid. The lower court, therefore, did not err in granting accelerated judgment on this issue.

Plaintiffs next argue that, since Ronald Ryoti's discharge from employment is contrary to public policy, this dispute should not be submitted to arbitration. While this state recognizes a cause of action for wrongful discharge where the discharging of an employee is contrary to public policy, *Suchodolski v Michigan Consolidated Gas Co,* 412 Mich 692; 316 NW2d 710 (1982), the question of whether this discharge was improper goes to the merits of plaintiffs' claim and should be settled pursuant to the arbitration agreement.

[1] It is unsettled as to who has the burden of proving the validity of the arbitration agreement. This issue was not settled in *Morris v Metriyakool,* 418 Mich 423; 344 NW2d 736 (1984), as defendant argues. Defendant's citation, 418 Mich 439, is to an opinion which was only signed by two justices. Two other justices found that this issue was not properly raised on appeal. 418 Mich 474.

Plaintiffs next argue that the fact that the New York Stock Exchange determines the composition of the arbitration panel denies to plaintiff Ronald Ryoti his right to a fair decision maker and thus violates his right to due process. As we previously noted, the exchange's arbitration tribunals seem to be fair and impartial. *Drayer, supra.* We also find that the procedures for selecting the arbitrators do not deprive plaintiff of a fair decision maker. *Morris v Metriyakool,* 418 Mich 423; 344 NW2d 736 (1984). In *Morris,* the Supreme Court found that the fact that a physician was required to sit on an arbitration panel that was to determine whether another physician was negligent did not deprive the plaintiff of the right to a fair decision maker. Likewise, in the instant case, the fact that the exchange chooses the composition of the arbitration panel does not deprive plaintiffs of their due process right. The exchange's rules governing arbitration sufficiently meet due process standards.

Plaintiffs next argue that there was no bargained-for consideration given in exchange for the agreement to arbitrate. Plaintiff Ronald Ryoti's employment with defendant was conditioned on his becoming registered with the New York Stock Exchange. To become registered with the exchange, plaintiff Ronald Ryoti had to sign the arbitration agreement. The fact that he did not sign the arbitration agreement until two weeks after he began working for defendant does not show a failure of consideration. Clearly plaintiff Ronald Ryoti was aware that he needed to satisfy the requirements to become registered with the exchange when he began employment with defendant. Plaintiffs' reliance on *Higgins v Monroe Evening News,* 404 Mich 1; 272 NW2d 537 (1978), is misplaced. In that case, there was a dispute as

to whether a contract of employment existed. In this case, it is undisputed that there was a contract of employment. *Ruffin v Mercury Record Productions, Inc,* 513 F2d 222 (CA 6, 1975), is also distinguishable. In that case, an oral promise made by the employer after a written contract had been signed was found to be unsupported by consideration. In the instant case, plaintiff Ronald Ryoti signed a written arbitration agreement which became part of his employment contract. In fact, his employment was conditioned upon his signing this agreement. Under these circumstances, it is clear that the arbitration agreement was supported by consideration.

After considering all of plaintiffs' arguments, we find that the lower court properly granted accelerated judgment in favor of defendant.

Affirmed.