STENKE v MASLAND DEVELOPMENT CO, INC

MASLAND DEVELOPMENT CO, INC v AMOCO OIL CO

Docket Nos. 84803, 84804. Submitted March 5, 1986, at Lansing.
Decided April 22, 1986.

Masland Development Co., Inc. owned property leased to Stan-
dard Oil Company, which used the property as a site for a
gasoline station. The lease was regularly renewed until Amoco
Oil Company, Standard Oil Company's successor in interest,
decided to exercise its option to purchase the property at a
fixed price. The lease provided Amoco with both an option to
buy the property at a fixed price of $85,000 and a right of first
refusal to purchase the property at a price equal to a third
party's bona fide offer. Amoco thereafter assigned the lease
including the exercised option to purchase to Larry Stenke, the
operator of the gasoline station located on the property. Stenke
subsequently commenced an action in the Washtenaw Circuit
Court against Masland, seeking specific performance of the
conveyance of the property pursuant to the option. Masland
filed affirmative defenses and a counterclaim against Stenke,
contending that the option provisions of the lease were invalid
and unenforceable as a matter of law. Masland also initiated
summary proceedings in district court against Amoco and
Stenke and seeking possession of the property. Masland's dis-
trict court action was removed to the circuit court and consoli-
dated with Stenke's action by stipulation of the parties. The
parties filed opposing motions for summary judgment. The trial
court, Henry T. Conlin, J., granted summary disposition in
favor of Amoco and Stenke and against Masland, after ruling
that the lease was (1) assignable, (2) did not constitute an

REFERENCES

Am Jur 2d, Landlord and Tenant §§ 367 et seq., 391 et seq.

Am Jur 2d, Perpetuities and Restraints on Alienation §§ 6 et seq.,
62 et seq., 100 et seq.

Sufficiency of provision of lease to effect second or perpetual right
to renewal. 29 ALR4th 172.

Independent option to purchase real estate as violating rule against
perpetuities or restraints on alienation. 66 ALR3d 1294.

Pre-emptive rights to realty as violation of rule against perpetuities
or rule concerning restraints on alienation. 40 ALR3d 920.

unreasonable restraint on alienation, (3) did not violate the
rule against perpetuities, and (4) was not unconscionable. The
trial court further ruled that Amoco did not waive its right to
exercise the option. Masland appealed. *Held:*

1. The dual option to purchase provision of the lease in
question did not, in effect, constitute an unreasonable restraint
on alienation by limiting the price at which Masland could sell
the property during the lease term at $85,000 as Masland
argued, since Masland, had it received a bona fide purchase
offer from a third party, could have sold the property to Amoco
at the price offered by the third party.

2. The rule against perpetuities only applies to real and
personal property interests. Therefore, the rule, as embodied in
MCL 554.51, does not apply to an option to purchase land
because the holder of such option does not have a legal or
equitable interest in property.

3. The record did not support Masland's contention that the
lease was unconscionable. The fixed price option was fair at the
time the contract was entered into and Masland was free to sell
to a purchaser who was willing to pay a higher price, if Amoco
were to exercise its right of first refusal.

4. The terms of the lease allowed for the assignment of the
lease and all its terms, including the option provisions.

5. No genuine issue of material fact existed with respect to
Masland's contention that Amoco waived its option to purchase
the leased premises. In fact, the record indicated that any
statements to the effect that Amoco would waive its option to
purchase the property were made by persons who had no
authority to waive or exercise the option and bind Amoco
accordingly. The trial court therefore did not err in granting
summary disposition in favor of Amoco on this issue.

Affirmed.

1. WORDS AND PHRASES — RESTRAINTS ON ALIENATION.

A restraint on alienation of property is an attempt by an other-
wise effective conveyance or contract to cause a later convey-
ance (1) to be void, (2) to impose a contractual liability upon the
conveyor for conveying in breach of the agreement not to
convey, or (3) to terminate all or part of a conveyed property
interest.

2. LANDLORD AND TENANT — LEASES — OPTIONS TO PURCHASE —
RESTRAINTS ON ALIENATION.

A lease which gives the lessee both an option to buy the leased
premises at a fixed price and a right of first refusal to buy the
leased premises for an amount equal to a bona fide offer made

by a third party does not constitute an unreasonable restraint on alienation, which is prohibited under the common law.

3. PROPERTY — RULE AGAINST PERPETUITIES.

The common-law rule against perpetuities has been adopted in Michigan by a statute which expanded the rules's application to both real and personal property interests; the rule against perpetuities is violated if, at the time an instrument creating a future estate or interest in property comes into operation, it is not certain that the estate will vest or fail to vest within twenty-one years of the death of a person named in the instrument (MCL 554.51; MSA 26.49[1]).

4. PROPERTY — LEASES — OPTIONS TO PURCHASE — RULE AGAINST PERPETUITIES.

The holder of an option to purchase land does not have an interest in the premises, either legal or equitable, prior to exercising the option; therefore, the rule of perpetuities, which only applies to interests in property, does not apply to options to purchase land.

5. CONTRACTS — UNCONSCIONABLE CONTRACTS.

A two-pronged test is applied for determining whether a contract is unenforceable as unconscionable: (1) what is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?, and (2) is the challenged term substantively reasonable?; even if the contract is adhesive under the first prong, the challenged term is still enforceable if it is substantially reasonable and not oppressive or unconscionable.

6. LANDLORD AND TENANT — LEASES — OPTIONS TO PURCHASE — ASSIGNMENTS.

An option to purchase contained in a lease is assignable, absent a contractual provision prohibiting assignment.

7. LANDLORD AND TENANT — LEASES — ASSIGNMENTS.

The assignment of a lease vests the assignee with all the rights of the former lessee unless such is expressly excluded by the lease.

*Dobson, Griffin & Westerman, P.C.* (by *Harvey W. Berman*), for Larry E. Stenke.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Ernest R. Bazzana* and *Mary Ellen Darin*), for Amoco Oil Co.

*Brimacombe & Schlecte, P.C.* (by *Judith A. Ward*), for Masland Development Co, Inc.

Before: M. J. KELLY, P.J., and SHEPHERD and R. L. TAHVONEN,* JJ.

PER CURIAM. The subject of this dispute is a lease with an option to purchase involving commercial property located on West Stadium Boulevard in Ann Arbor. Defendant-counterplaintiff Masland Development Company, the owner of the property, entered into a lease with Standard Oil Company, the predecessor in interest of defendant Amoco Oil Company, on February 14, 1958. Renewals of the lease effectuated continuance of the lease through July 17, 1983. On February 2, 1983, the tenant Amoco exercised its option to purchase the property, which was being used as a retail gas station. On May 12, 1983, Amoco assigned the lease including the exercised option to purchase to plaintiff-counterdefendant Larry Stenke who operated the gas station on the premises. Stenke subsequently commenced this action against Masland in the circuit court, seeking specific performance of conveyance of the property pursuant to the option to purchase. Masland filed affirmative defenses and a counterclaim against Stenke, contending that the option provisions of the lease are invalid and unenforceable as a matter of law. Masland also initiated summary proceedings in the district court for possession of the property and unpaid rent. By stipulation of the parties, Masland's district court action was removed to the circuit court and consolidated with Stenke's action.

The parties filed opposing motions for summary judgment. The trial court granted summary disposition in favor of Amoco and Stenke and against

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Masland pursuant to MCR 2.116(C)(9) and (10). Masland appeals from that order, claiming that the trial court erred in finding that the lease which is the subject of the parties' dispute was assignable, did not constitute an unreasonable restraint on alienation, did not violate the rule against perpetuities, and was not unconscionable. Masland also asserts that the trial court erred in granting summary disposition on Masland's claim that the appellees waived the right to exercise an option to purchase the subject property, because genuine issues of material fact exist. We affirm the trial court's order.

I

Masland first argues that the option provision of the lease constitutes an unreasonable restraint on alienation since, according to Masland, it effectively placed an $85,000 ceiling on the value of the leased premises during the term of the lease.

Paragraph 9 of the lease gave the lessee a fixed price option to buy the leased premises for $85,000 and a right of first refusal to buy the property for the amount contained in any bona fide offer made by a third party. Paragraph 9 provides in pertinent part:

> Lessee shall have, and is hereby given, the option of purchasing said premises, buildings, fixtures, equipment, machinery and appliances included in this lease, for the sum of EIGHTY FIVE THOUSAND AND NO/100—DOLLARS ($85,000.00), provided Lessee shall give Lessor notice in writing of its election to exercise said option of purchase at least thirty (30) days prior to the expiration of this lease, or at least thirty (30) days prior to the expiration of any extension period, if this lease be extended, it being understood

that in no event may this option be exercised prior to end of first year original term. . . . It is further understood that if the Lessor or the Lessor's heirs, executors, grantees, or assigns, or successors or assigns at any time during the term of this lease or any extension thereof, receives a bona fide offer to purchase said premises or any property which includes the premises, and said buildings, fixtures, equipment, machinery and appliances and desires to sell said premises, buildings, fixtures, equipment, machinery and appliances, or any part thereof under the terms of said offer, Lessor agrees to give Lessee (90) days notice in writing of such bona fide offer, setting forth the name and address of the proposed purchaser who has made the offer, the amount of the proposed purchase price, and all other terms and conditions of such offer, and the Lessee shall have the first option to purchase the demised premises by giving written notice to the Lessor of its intention to purchase within said (90) day period at the same price and on the same terms of any such proposal.

Michigan follows the common-law rule against unreasonable restraints on alienation of property. *Moffit v Sederlund,* 145 Mich App 1, 12-13; 378 NW2d 491 (1985). The Restatement, Property, § 404, p 2381 defines a restraint on alienation of property as an attempt by an otherwise effective conveyance or contract to cause a later conveyance (1) to be void, (2) to impose a contractual liability upon the conveyor for conveying in breach of the agreement not to convey, or (3) to terminate all or part of a conveyed property interest. *Nichols v Ann Arbor Federal Savings & Loan Ass'n,* 73 Mich App 163, 165; 250 NW2d 804 (1977), lv den 400 Mich 844 (1977).

While Masland apparently concedes that the dual option is not technically a restraint on alienation since it did not prevent alienation, Masland argues that the practical effect of the option provi-

sion effectively restricts alienation by placing an $85,000 limit on the purchase price. Masland relies on *Nichols, supra,* as authority that contractual provisions that restrict alienation as a practical matter constitute unlawful restraint. In *Nichols,* a due-on-sale clause in a mortgage contract was challenged. While this Court recognized that the clause was not within the classical definition of restraint on alienation, it held that "the due on sale clause directly and fundamentally burdens a mortgagor's ability to alienate as surely and directly as the classical promissory restraint." 73 Mich App 166. Masland asks this Court to expand the *Nichols* rationale to the dual option provision which is the subject of this appeal.

However, Masland's reliance upon *Nichols* is misplaced because the dual option provision in the parties' lease does not restrict alienation even as a practical matter. Masland's position is premised upon an interpretation of the option clause that the option to purchase at a fixed price can intervene in a circumstance in which the lessee has already been notified of a third-party offer. This Court rejected such an interpretation of an identical option provision in *Amoco Oil Co v Kraft,* 89 Mich App 270; 280 NW2d 505 (1979). In *Kraft,* the lessee was notified of a bona fide purchase offer and declined to exercise its first-refusal option. The sale was made to the third party, and several years later the lessee sought to exercise its fixed-price option. This Court held:

> The language of the lease clearly indicates that the parties intended to create alternative options of equal stature. Under plaintiff's interpretation of the contract, however, the first refusal option would cease to be an independent option and instead be transformed into a secondary option subordinate to the fixed price option. Plaintiff's

interpretation would freeze the value of the lease-
hold at the amount of the fixed price option. No
one would be willing to purchase the property for
a higher price than the fixed price with the knowl-
edge that he could lose his investment and be
divested of the property if plaintiff decided to
purchase the property at the lower fixed price.
This being the case, plaintiff would never have
occasion to exercise its first refusal option, and it
would be rendered virtually meaningless. We find
nothing in the contract to show that the parties
intended to make the first refusal option depen-
dent on the fixed price option or to fix a ceiling
price on the value of the leasehold. Therefore,
plaintiff's interpretation of the contract cannot
stand. See *Manassee v Ford,* 58 Cal App 312; 208 P
354 (1922), *Texaco, Inc v Rogow,* 150 Conn 401; 190
A2d 48 (1963).

Conversely, under defendants' interpretation of
the contract, both options continue to be viable
until one of them ceases to be merely a contingent
interest and instead becomes a vested right, at
which time the nonvested option is extinguished.
Since defendants' interpretation of the contract
keeps both options independent and viable, it is
the more reasonable interpretation of the contract.
[89 Mich App 273-275. Footnotes omitted.]

Thus, according to the language of the contract,
if Masland had ever received a bona fide offer to
purchase from a third party, upon notification as
prescribed by the lease the first-refusal option
would have vested and the fixed-price option would
have been inoperative. We conclude, as did the
trial court, that the lease did not limit the price of
the property and thus did not effectively constitute
an unreasonable restraint on alienation.

II

Masland next argues that the dual option provi-

sion of the lease violates the rule against perpetuities by creating an estate in property which might not vest during the twenty-five-year term of the lease. More properly stated, the argument is that the option could remain "contingent," i.e., unexercised, beyond twenty-one years.

The common-law rule against perpetuities has been adopted in Michigan by statute. MCL 554.51; MSA 26.49(1). The statute also expanded the rule to apply to both real and personal property interests. The rule against perpetuities is violated if, at the time an instrument creating a future estate (interest in property) comes into operation, it is not certain that the estate will vest or fail to vest within twenty-one years of the death of a person named in the instrument. *Moffitt v Sederlund, supra.*

It is readily apparent that the rule against perpetuities is not applicable in the present case since the holder of an option to purchase land does not have an interest in the premises, either legal or equitable. *Oshtemo Twp v Kalamazoo,* 77 Mich App 33; 257 NW2d 260 (1977), lv den 402 Mich 814 (1977). The rule against perpetuities applies only to future estates or interests in property. In *Windiate v Leland,* 246 Mich 659, 665; 225 NW 620 (1929), the Supreme Court quoted with approval the following language from *Keogh v Peck,* 316 Ill 318; 147 NE 266; 38 ALR 1151 (1925):

"An option to purchase does not create estate in land. No title, legal or equitable, is granted to the holder of the option by an option agreement.

"Options are not invalid as contrary to rule against perpetuities. Optional contracts, either in deeds or in long-term leases, giving an optional right of forfeiture and re-entry for covenant broken or a right of renewal are not invalid as being contrary to the rule against perpetuities."

Masland asserts that *Windiate* is not controlling authority because its holding was based upon a statutory rule against perpetuities which was repealed in 1949. This argument is faulty for two reasons. First, while *Windiate* was originally decided by analysis of only the then-applicable statute, 236 Mich 531, 534 (1926), on rehearing our Supreme Court also reviewed the case under the perspective of the common-law rule. The Court's rationale on rehearing was based on its "own holding, by text writers, and by decisions of other courts." 246 Mich 664-665. In short, the conclusion that options cannot violate the rule against perpetuities was based on the common-law rule which remains the controlling law of this state today. Second, the underlying premise of *Windiate,* that an option to purchase creates no interest on behalf of the option holder, remains current law. *Oshtemo Twp v Kalamazoo, supra.*

The lower court did not err in granting summary disposition against Masland's rule against perpetuities defense.

### III

Masland also argues that it should be given the opportunity to show at trial that the purchase option provision was unconscionable.

During discovery, the only deposition taken was that of Masland's president, Joseph Petovello. Petovello is also a director and the sole owner of Masland. Masland, a commercial real estate development company, was founded by Edward Maslanka. Petovello bought Masland in 1961. At the time the instant lease was negotiated, Masland was represented by Maslanka, who was a commercial builder, and Maslanka's lawyer. It happens that Petovello at the time was an employee of

Standard (the corporate predecessor of Amoco), and negotiated the subject lease, that he now claims is unconscionable, on behalf of his employer.

Petovello, a licensed real estate broker, has extensive experience in commercial real estate development, particularly in the area of retail petroleum outlet locations. He testified that fairly extensive negotiations regarding the instant lease took place between himself and Masland's representatives, and that the parties did not reach an agreement for sixty days. One of the major issues during negotiations was the amount at which the fixed-price option should be set, which Masland attempted to fix at as high an amount as possible. Petovello also testified that when the parties agreed to a price of $85,000, it was a fair and good price for the land.

The equitable doctrine of unconscionability has a long history in Michigan. In *Eames v Eames,* 16 Mich 348 (1868), our Supreme Court refused to exercise its power to order specific performance of a contract because the contract would have given the buyer an unconscionable advantage. The doctrine was adopted by our Legislature in the Uniform Commercial Code, MCL 440.2302; MSA 19.2302, and continues to apply to contracts outside the scope of the Uniform Commercial Code as well. *Reed v Kaydon Engineering Corp,* 38 Mich App 353, 356; 196 NW2d 487 (1972). There is a two-pronged test for determining whether a contract is unenforceable as unconscionable:

"(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?; (2) Is the challenged term substantively reasonable?" *Allen v Michigan Bell Telephone Co,*

18 Mich App 632, 637; 171 NW2d 689 (1969), *lv den* 383 Mich 804 (1970).

Even if the contract is adhesive under the first prong, still the challenged term is enforceable if it is substantively reasonable and not oppressive or unconscionable. *Allen, supra,* p 638; *Brown v Siang,* 107 Mich App 91, 107; 309 NW2d 575 (1981). [*Ryoti v Paine, Webber, Jackson & Curtis, Inc,* 142 Mich App 805, 809; 371 NW2d 454 (1985).]

Contrary to Masland's argument on appeal, its owner, director, and president testified during deposition that the lease agreement was extensively negotiated by experienced and knowledgeable persons. Unlike the typical contract of adhesion between an individual and a monopoly, this lease was the result of two corporations dealing at arms' length. Such circumstances support the conclusion that the instant lease is not unconscionable. See *St Paul Fire & Marine Ins Co v Guardian Alarm Co of Michigan,* 115 Mich App 278, 283; 320 NW2d 244 (1982).

Even if there were unequal bargaining power to the extent that Standard's position was unconscionably advantageous, the lease is still enforceable if the resultant terms are substantively fair. *Ryoti, supra,* p 809. Masland argues that the option provision was unfair. It points to the dual option provision, and repeats its argument regarding interpretation of the effect of that provision which it advanced in its first issue on appeal. As set forth previously, Masland's argument has no merit.

The appellees' motions for summary judgment on this issue were brought pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10). A motion for summary judgment under rule 117.2(3) is designed to test whether there is factual support for a claim. In ruling on this motion, a trial court must con-

sider not only the pleadings, but also depositions, affidavits and other documentary evidence. *Rizzo v Kretschmer,* 389 Mich 363, 373; 207 NW2d 316 (1973). The party opposing the motion must come forward to establish the existence of a material factual dispute. If the nonmoving party fails to establish that a material fact is in issue, the motion is properly granted. *Bob v Holmes,* 78 Mich App 205, 212; 259 NW2d 427 (1977).

Here, Masland has failed to point to anything on the record which would support its contention that the lease was procedurally or substantively unconscionable. Rather, the testimony of Masland's president amounts to a party admission that the lease negotiations and the resultant terms were fair. In ruling on the motion, the trial court held that the record entirely failed to substantiate Masland's contentions of unconscionability. We agree. The dual option provision afforded Masland two alternatives: 1) it could do nothing and be faced with the possibility that Amoco would exercise its $85,-000 fixed price option, or 2) it could have put the property on the market and attempted to get a higher price. As a matter of law, where the fixed price option is fair at the time the contract was entered into and the owner is free to sell to a purchaser who will pay a higher price, we cannot conclude that the dual option provision in dispute in this case is unconscionable. Because there was no factual issue in dispute regarding the unconscionability of the contract, summary disposition of this issue was proper. *Barck v Grant State Bank,* 137 Mich App 440, 446; 357 NW2d 872 (1984).

IV

Masland next argues that the purchase-option

provision of the lease was not assignable and therefore its purported assignment by Amoco to Stenke is invalid as a matter of law.

Paragraph 12 of the parties' lease begins:

> Lessor agrees that Lessee may assign this lease or sublet the premises and equipment herein described without consent of Lessor.

Based upon this language, the trial court held that Amoco unquestionably could assign its lessee's interest to Stenke. Masland now avers that the trial court misinterpreted the above-quoted provision. It asserts that the assignment clause must be read in context with other provisions that suggest that assignment of the lease was contemplated only for assignment of the lessee's possessory interest in the property. This argument focuses upon the use of "lease" (with a small "l") as opposed to "Lease" which Masland claims indicates that only the possessory interest of the lease was assignable.

Absent a contractual provision prohibiting assignment, an option to purchase contained in the lease is assignable. *Berrien County Fruit Exchange, Inc v Pallas,* 314 Mich 66, 72; 22 NW2d 74 (1946). As a general rule, contractual restrictions against assignability are strictly construed, *Miller v Pond,* 214 Mich 186, 190; 183 NW 24 (1921), and in cases of options to purchase, the lease is to be construed with the purpose of benefit to the lessee in view. *Holt v Stofflet,* 334 Mich 272, 274; 54 NW2d 593 (1952).

Masland's contention that the use of "lease," as opposed to "Lease," in paragraph 12 supports its position is both strained and mistaken. The parties' lease consists of two separate contracts, which were simultaneously made. The first, entitled "Lease," is a one-page document which merely

gave to Standard the right to possession and use of the property. The second document, entitled "Agreement," consists of four pages and sets forth all of the remaining terms of the parties' contract. In paragraph 1 of the agreement, reference is made to the "Lease," and the agreement is incorporated into the Lease. Elsewhere in the agreement, when reference is made to the overall terms of the contract, the documents together are referred to as the "lease." Thus, the use of "lease" in paragraph 12 of the parties' contract actually leads to the opposite conclusion than that urged by Masland here. That is, since "lease" refers to all of the terms of the contract and "Lease" refers to the one-page document which granted possession of the property, paragraph 12 clearly allows assignment of the lease and all of its terms, including the purchase-option provision.

Moreover, Masland's interpretation of the lease does not comport with Michigan law. Unless expressly excluded, the assignment of a lease vests the assignee with all the rights of the former lessee. *Weatherwax Investment Co v PPG Industries, Inc,* 43 Mich App 546, 549; 204 NW2d 353 (1972). Contrary to Masland's contention, the purchase option clause is not separable from the leasehold interest. *Meadow Heights Country Club v Hinckley,* 229 Mich 291, 293-294; 201 NW 190 (1924). The documents in question did not expressly exclude assignment of the option to purchase and consequently the trial court did not err in ruling that the option was assignable.

V

Masland's final argument is that genuine issues of material fact exist with respect to its contention that Amoco waived its option to purchase the leased premises.

Joseph Petovello, Masland's president, testified during his deposition that in 1981 and 1982 he was told by certain Amoco employees that Amoco would not be releasing or purchasing the subject property. Only later in 1982 or in early 1983 did Amoco appear to reverse its position and exercise its purchase option.

Stenke and Amoco assert Petovello's deposition does not raise a genuine issue of material fact that there was a waiver of the option and, in any event, that the purported oral waiver was ineffective as a matter of law under MCL 556.1; MSA 26.978(1), since it was not in writing. We need not consider whether the purported oral waiver was ineffective since we agree that Petovello's own testimony establishes that he was well aware from his own experience as an Amoco employee that the Amoco employees with whom he discussed the matter had no authority to waive the purchase option and that any statement by them that Amoco would not be exercising the option was not binding on the company.

Petovello testified to Amoco's management hierarchy, which did not vest in its field representatives the authority to enter into leases. While the field representatives and their managers conducted the negotiations with outside parties, authority to agree to contractual terms was reserved to personnel two and three tiers higher in the management scheme. Petovello's conversations with Amoco employees regarding Amoco's release or purchase of the property all took place with employees who did not have contractual authority on behalf of Amoco, or at least no authority to waive the purchase option. Significantly, Petovello was aware that he was not dealing with employees who could speak with finality for Amoco. Moreover, Petovello never acted in reliance upon the pur-

ported waiver. Rather, he testified that he did not enter into a lease or sale agreement with any third persons because he was bound to the Amoco lease, including the possibility that the purchase option would be exercised, even after the purported waiver.

Thus, Masland itself, by its president, director, and sole owner, has established that the presentations made to Masland by Amoco were not made by persons who had authority to waive Amoco's contractual rights, that Masland was aware that the employees making the representations had no such authority, and that Masland was never induced to believe that Amoco had waived its purchase option right. Conversely, Masland has not submitted any affidavit or any other documentation that would dispute Petovello's testimony and raise a genuine issue of material fact. Under the circumstances, summary disposition of the issue was proper. *Durant v Stahlin,* 375 Mich 628, 638; 135 NW2d 392 (1965).

Accordingly we affirm the trial court's well-reasoned opinion and order granting summary disposition against Masland.

Affirmed.