*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN AMBULATORY SURGICAL CENTER,

Plaintiff-Appellee,

v

FARM BUREAU GENERAL INSURANCE COMPANY OF MICHIGAN,

Defendant-Appellant.

FOR PUBLICATION
November 19, 2020
9:05 a.m.

No. 349706
Oakland Circuit Court
LC No. 2019-172994-NF

Before: RIORDAN, P.J., and O'BRIEN and SWARTZLE, JJ.

RIORDAN, P.J.

Defendant appeals by leave granted[1] the trial court's order denying defendant's motion for summary disposition in this action to collect personal injury protection (PIP) benefits under the no-fault act, MCL 500.3101, *et seq.* We vacate the order and remand this case to the trial court.

## I. FACTS & PROCEDURAL HISTORY

On October 19, 2015, defendant's insured, Terry Tracy, was injured in a motor vehicle accident in Orion Township and filed suit against defendant to collect unpaid PIP benefits. Pursuant to a settlement agreement executed on November 10, 2017, between Tracy and defendant, in exchange for $7,500, Tracy released her rights to PIP benefits accrued through the date of the case evaluation, September 25, 2017. The settlement agreement was a separate contract with a merger clause—not an addendum to the no-fault policy and did it not in any way limit coverage under the policy or prohibit Tracy from seeking additional PIP benefits in the future. Rather, the settlement agreement anticipated that Tracy would accrue additional claims to PIP benefits in the future. The settlement agreement specifically provided that she would "not assign any of her rights to medical benefits to medical providers in the future without the express written

[1] *Mich Ambulatory Surgical Ctr v Farm Bureau Gen Ins Co of Mich*, unpublished order of the Court of Appeals, entered September 6, 2019 (Docket No. 349706).

-1-

consent of [defendant]" with respect to any claim for benefits arising from the motor vehicle accident that occurred on October 19, 2015, in Orion Township.

Thereafter, Tracy sought and received plaintiff's medical services and thereby created a newly accrued claim for PIP benefits. Contrary to her agreement with defendant, Tracy then assigned to plaintiff her right to reimbursement for plaintiff's billings. Plaintiff filed suit against defendant to recover payment for the assigned, newly-accrued PIP benefits. Defendant then filed a motion for summary disposition, arguing that the anti-assignment clause in the settlement agreement invalidated Tracy's later assignment to plaintiff. Plaintiff responded that contractual provisions barring the post-loss assignment of an accrued claim to payment of insurance benefits are unenforceable as against public policy under *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 200; 920 NW2d 148 (2018). In turn, defendant argued that *Shah* only applied to anti-assignment clauses in no-fault insurance policies but not to similar clauses in settlement agreements. The trial court denied defendant's motion and this appeal followed.

## II. ANALYSIS

At the outset, we clarify that the issue in this case is whether the trial court committed error requiring reversal when it concluded that the anti-assignment provision in the settlement agreement was invalid pursuant to our holding in *Shah*, 324 Mich App at 200. Specifically, we must determine whether there is a factual distinction between the anti-assignment provision in the no-fault policy at issue in *Shah* and a similar provision in the settlement agreement between defendant and its insured. See *In re Houghten's Estate*, 310 Mich 613, 618; 17 NW2d 774 (1945) (principles of stare decisis apply unless the facts of the subsequent care are distinguishable). For the reasons stated below, we find that *Shah* is inapplicable to the facts of this case. The anti-assignment provision in the settlement agreement does not contravene any portion of the no-fault act, and unlike in *Shah*, we cannot find that it violates any public policy identified by our jurisprudence.

We review de novo matters of statutory interpretation and a trial court's decision on a motion for summary disposition under MCR 2.116(C)(8). *City of Fraser v Almeda Univ*, 314 Mich App 79, 92; 886 NW2d 730 (2016); *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We enforce unambiguous contracts as written and we uphold the validity of an anti-assignment provision that is clear and unambiguous unless it violates law or public policy. *Westfield Ins Co v Ken's Serv*, 295 Mich App 610, 615; 815 NW2d 786 (2012); *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19, 24; 800 NW2d 93 (2010); *Shah*, 324 Mich App at 198, citing *Detroit Greyhound Employees Fed Credit Union v Aetna Life Ins Co*, 381 Mich 683, 689-690; 167 NW2d 274 (1969); *Employers Mut Liability Ins Co of Wisconsin v Mich Mut Auto Ins Co*, 101 Mich App 697, 702; 300 NW2d 682 (1980); *Rory v Continental Ins Co*, 473 Mich 457, 468-469; 703 NW2d 23 (2005).

We begin with the relevant language of the no-fault act. MCL 500.3143 states that "[a]n agreement for assignment of a right to benefits payable in the future is void." By enacting MCL 500.3143, the Legislature codified the public policy concerns that arise when an insurer's risk is

increased by an insured's assignment of a contractual relationship.[2]  However, MCL 500.3143 neither mentions nor prohibits agreements *not* to assign benefits—such as the anti-assignment provision contained in the settlement agreement in this case. *Book-Gilbert v Greenleaf*, 302 Mich App 538, 541–42; 840 NW2d 743 (2013) (we may not "read into the statute a requirement that the Legislature has seen fit to omit") (citations omitted).  " '[A] right to benefits payable in the future' is distinguishable from a right to past due or presently due benefits." *Profl Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 172; 577 NW2d 909 (1998).  Similarly, an agreement *not* to assign future rights is distinguishable from "an agreement for assignment of a right to benefits payable in the future."  MCL 500.3143.

Perhaps, when enacting MCL 500.3143, the Legislature intended to invalidate a pre-loss assignment of an insurance policy to prevent an insured from substituting in a different party, and consequently assigning to an insurer a risk that it did not agree to cover.  But that is not for us to discern or decide here, as we are charged with the responsibility of following the language of the statute as written, and not with making policy. *Profl Rehab Assoc*, 228 Mich App at 172. MCL 500.3143 pertains to "benefits payable in the future" and it does not distinguish between a pre-loss transfer of an insurance policy or a post-loss transfer of benefits for a claim that has not accrued under the policy.  Presumably, in either scenario the assignment would be invalid, but neither factual scenario is present in this case because Tracy did not transfer the policy itself, and the assignment was executed after her claim had accrued as part of an agreement that is separate

---

[2] See 2 Couch, Insurance, § 34:2 ("[A] provision in a policy of insurance which prohibits its assignment except with the consent of the insurer does not apply to prevent assignment of claim or interest in the insurance money then due after loss."); 3 Couch, § 35:8 ("[T]he great majority of courts adhere to the rule that general stipulations in policies prohibiting assignments of the policy, except with the consent of the insurer, apply only to assignments before loss, and do not prevent an assignment after loss, for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy, as distinguished from a claim arising under the policy, and the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim.  The purpose of a no assignment clause is to protect the insurer from increased liability, and after events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity." (footnotes omitted)); 17 Williston, Contracts (4th ed) § 49:119 ("Anti-assignment clauses in insurance policies are strictly enforced against attempted transfers of the policy itself before a loss has occurred, because this type of assignment involves a transfer of the contractual relationship and, in most cases, would materially increase the risk to the insurer.  Policy provisions that require the company's consent for an assignment of rights are generally enforceable only before a loss occurs, however, as a general principle, a clause restricting assignment does not in any way limit the policyholder's power to make an assignment of the rights under the policy – consisting of the right to receive the proceeds of the policy – after a loss has occurred.  The reasoning here is that once a loss occurs, an assignment of the policyholder's rights regarding that loss in no way materially increases the risk to the insurer.  After a loss occurs, the indemnity policy is no longer an executory contract of insurance.  It is now a vested claim against the insurer and can be freely assigned or sold like any other chose in action or piece of property.").

and distinguishable from the no-fault policy that was in effect. See generally *Allard v State Farm Ins Co*, 271 Mich App 394, 400; 722 NW2d 268 (2006) ("Until the expense is incurred, the insured's entitlement to benefits does not accrue and the insurer's liability to pay the claim does not attach.").

In *Shah*, we held that an anti-assignment clause contained within an insurance policy was unenforceable to prohibit an assignment of an accrued claim because such a prohibition violates Michigan public policy. *Shah*, 324 Mich App at 200. Our analysis relied entirely on our Supreme Court's holding *Roger Williams Ins Co v Carrington*, 43 Mich 252, 254; 5 NW 303 (1880), which states:

> The assignment having been made after the loss did not require consent of the company. The provision of the policy forfeiting it for an assignment without the company's consent is invalid, so far as it applies to the transfer of an accrued cause of action. It is the absolute right of every person—*secured in this state by statute*—to assign such claims, and such a right cannot be thus prevented. It cannot concern the debtor, and it is against public policy. [Emphasis added.]

Notably, the statute referenced in *Roger Williams* was not cited or otherwise identified, and *Roger Williams* was decided nearly 100 years before the enactment of the no-fault scheme,[3] and more than 75 years before the adoption of the Insurance Code.[4] Nonetheless, this Court found that *Roger Williams* was binding precedent which precluded the insurer from enforcing the anti-assignment provision in the insurance policy. *Shah*, 324 Mich App at 200.

This case does not present the same public policy concerns regarding insurance policies as implicated in *Shah*, and *Roger Williams*. In those cases, the courts concluded that public policy compelled a judicial redrafting of the terms of the respective insurance policies because doing so would not increase an insurer's liability, but we cannot conclude that the same is true in this case. Here, defendant does not dispute coverage of the newly accrued claims, and like in *Shah*, a judicial redrafting of the settlement agreement would not increase defendant's liability under the terms of the insurance policy with respect to the newly accrued claims. However, doing so may increase defendant's liability under the settlement agreement. The dissent concludes this distinction is unimportant because the anti-assignment provision has the same effect regardless of whether it is drafted into an insurance policy or a separate settlement agreement, and therefore, this case lacks any meaningful factual distinction from *Shah*. In effect, the dissent finds no practical distinction between the insurance policy and the settlement agreement. We cannot reach the same conclusion without declaring, for policy reasons, that a merger automatically occurred between the two documents, and invalidate the clause in the settlement agreement which states that it represents the "ENTIRE AGREEMENT" between the parties. Such policy judgments are the province of the Legislature, not for us to make. See *Hanson v Bd of Co Rd Com'rs of Co of Mecosta*, 465 Mich 492, 501–02; 638 NW2d 396 (2002) ("it is not the province of [the court] to make policy judgments or to protect against anomalous results"). Accordingly, we conclude that the issues relating to the

---

[3] Michigan No-Fault Automobile Insurance Law took effect on October 01, 1973.

[4] Michigan adopted the Insurance Code in 1956, PA 218.

settlement agreement here are factually distinct from the facts presented in *Shah*, and therefore, stare decisis does not compel any particular outcome in this case. See *First Michigan Corp v Trudeau*, 237 Mich App 445, 450; 603 NW2d 116 (1999) (a court is not required to apply the precedential effect required by MCR 7.215(C)(2) to a case that is factually distinguishable).

We decline to extend *Shah* to the facts before us because, here, public policy favors freedom to contract and encourages settlement between litigants—two goals that will be inhibited by rendering the anti-assignment provision before us unenforceable. See *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 52; 664 NW2d 776 (2003) ("The notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable."); *Empire Indus v N Assur Co*, 342 Mich 425, 429; 70 NW2d 769 (1955) ("Compromise settlements are favored by the law."). Moreover, under general contract law, although contractual restrictions against assignability are strictly construed, an assignment may be precluded by agreement. *Stenke v Masland Development*, 152 Mich App 562, 575; 394 NW2d 418 (1986), citing *Miller v Pond*, 214 Mich 186, 190; 183 NW 24 (1921). See also *Kaczmarck v La Perriere*, 337 Mich 500, 504-506; 60 NW2d 327 (1953) (there is no prohibition against requiring consent to effectuate an assignment); Restatement Contracts 2d, § 317(2) ("A contractual right can be assigned unless . . . assignment is validly precluded by contract.").

The majority opinion in *Shah* did not analyze MCL 500.3143, but it was briefly discussed in *Shah*'s partial concurring opinion:

> The no-fault act itself speaks to the issue of assignment. It provides, "An agreement for assignment of a right to benefits payable in the future is void." MCL 500.3143 (emphasis added). Notably, the Legislature elected not to void assignment of past-due benefits. By not including past-due benefits in this statutory prohibition, the Legislature, under the doctrine of *expressio unius est exclusio alterius*, made clear its intent to adhere to the fundamental principle that assignments of past-due benefits are effective and proper. [*Shah*, 324 Mich App at 216 (SHAPIRO, J., concurring in part and dissenting in part).]

It is a misapplication of the *expressio unius* maxim to conclude that the Legislature must have intended by implication to render invalid all anti-assignment provisions. The maxim *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another),[5] "has force only when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Esurance Prop & Cas Ins Co v Michigan Assigned Claims Plan*, ___Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 344715), quoting *Barnhart v Peabody Coal Co*, 537 US 149, 168; 123 S Ct 748; 154 L Ed 2d 653 (2003) (internal quotation marks omitted). Rather, the more appropriate canon of construction is *casus omissus pro omisso habendus est* (nothing is to be added to what the text states or reasonably implies), which prohibits courts from supplying provisions omitted by the Legislature. See Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*

---

[5] See *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 456; 770 NW2d 117 (2009).

(St. Paul: Thomson/West, 2012), p 93. Thus, although MCL 500.3143 prohibits the assignment of future benefits, it is silent regarding agreements *not* to assign benefits. The reasonable implication of the Legislature's omission regarding agreements *not* to assign benefits—as in the case before us—is that parties are free to contract according to their wishes.

Because the anti-assignment provision at issue here does not violate law or public policy identified in our jurisprudence, and because *Shah* does not apply to the facts of this case, the trial court erred when it concluded that *Shah* required denial of defendant's motion for summary disposition.

### III. CONCLUSION

The trial court erred when it concluded that the anti-assignment provision in the settlement agreement was invalid pursuant to our holding in *Shah*, 324 Mich App at 200. Accordingly, we vacate the trial court's order denying defendant's motion for summary disposition and remand this case for the trial court for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien