WESTFIELD INSURANCE COMPANY v KEN'S SERVICE

Docket No. 300941. Submitted January 11, 2012, at Lansing. Decided
    March 8, 2012, at 9:00 a.m. Leave to appeal denied, 493 Mich 880.
    Mark Robbins was injured during the performance of his duties as a
    tow truck operator for Ken's Service when a vehicle sideswiped the
    tow truck and hit Robbins while Robbins was outside the tow
    truck and operating the control levers positioned on the driver's
    side of the vehicle in order to extract a vehicle from a ditch. The
    insurer of the vehicle that hit Robbins agreed to tender the full
    limits of its policy to settle the claim. Robbins sought additional
    compensation from Westfield Insurance Company, Ken's Service's
    insurer, under the underinsured motorist coverage provided in the
    Westfield policy. Westfield refused to pay on the basis of its
    determination that Robbins had not been "occupying" the tow
    truck at the time of the accident. Westfield's policy provided for
    underinsured coverage for an "insured" and defined an insured, in
    part, to include anyone "occupying" a covered vehicle. The policy
    defined "occupying" to mean "in, upon, getting in, on, out or off."
    Westfield then brought an action in the Antrim Circuit Court for a
    determination of its obligations to Ken's Service and Robbins
    under its insurance contract. The court, Philip E. Rodgers, Jr., J.,
    denied a motion for summary disposition by Ken's Service and
    Robbins and granted Westfield's cross-motion for summary dispo-
    sition. The court interpreted the contract to mean that Robbins
    could prevail only if he could demonstrate that he was occupying
    the vehicle by being "upon" it when he was struck. The court
    determined that coverage depended on a person's connectedness
    with the activity of being a driver or passenger of the vehicle and
    if the person's activity or physical contact was incidental to being
    a driver or passenger the person was "occupying" the vehicle and
    therefore insured. The court stated that physical contact with the
    vehicle alone was not relevant and that the dispositive issue was
    whether Robbins's actions were the natural and probable result of
    being a driver or passenger. The court concluded that because
    Robbins was operating the vehicle as a towing machine when he
    was struck, his use was unrelated to being a driver or passenger of
    the truck and Robbins was not covered under the policy. Ken's
    Service and Robbins appealed.

The Court of Appeals *held*:

Although a person does not need to be physically inside a vehicle to be "upon" it, physical contact with the vehicle by itself does not establish that the person was upon the vehicle so as to be "occupying" the vehicle. A person must be on or up and on a vehicle in order to be "upon" it. At the time of the accident, Robbins was not getting in the tow truck, nor was he getting in, on, out, or off the tow truck. The trial court did not err by concluding that Robbins was not occupying the vehicle when he sustained bodily injury.

Affirmed.

M. J. KELLY, J., dissenting, stated that the unrebutted affidavit of Robbins indicates that he was leaning on the tow truck for balance and support at the time he was struck. The definition of "on" in the *Random House Webster's College Dictionary* (1997) is "so as to be or remain supported by or suspended from." Therefore, Robbins was "on" or "upon" and thus "occupying" the tow truck in accordance with the policy's definition of "occupying" and coverage should have been afforded him. The trial court should have granted summary disposition in favor of Ken's Service and Robbins.

INSURANCE — NO-FAULT — POLICIES — WORDS AND PHRASES — UPON — OCCUPYING.

A person's physical contact with an insured vehicle does not by itself establish that the person was "upon" the vehicle so as to be "occupying" the vehicle when the relevant no-fault insurance policy defines "occupying" as "in, upon, getting in, on, out or off"; one must be on or up and on a vehicle in order to be "upon" it.

*Collins, Einhorn, Farrell & Ulanoff, P.C.* (by *Deborah A. Hebert*), for plaintiff.

*Dingeman, Dancer & Christopherson, P.L.C.* (by *Nathan P. Miller* and *Mark R. Dancer*), for defendants.

Before: SAWYER, P.J., and WHITBECK and M. J. KELLY, JJ.

WHITBECK, J. In this declaratory judgment action involving underinsured motorist coverage, the circuit court granted summary disposition pursuant to MCR

2.116(C)(10) for plaintiff, Westfield Insurance Company. Defendants, Ken's Service and Mark Robbins, appeal as a matter of right. On appeal, they assert that the trial court erred by misinterpreting the language in the insurance contract to deny them coverage. We affirm.

### I. BASIC FACTS

On December 19, 2009, defendant Ken's Service, a tow truck company, dispatched one of its employees, Mark Robbins, to assist a police officer, Roderick Vessey, in removing his vehicle from a ditch on US-131. When he arrived at the scene, Robbins got out of the tow truck and connected the tow cables to the police vehicle. While he was operating the control levers positioned on the driver's side of the tow truck, another driver, Ashley See, sideswiped the tow truck and collided with Robbins. Robbins suffered substantial injuries, including a broken right arm and a protruding break of the right tibia/fibula. Robbins represents that he is "crippled for life."

Harold Ingersoll owned the car that Ashley See was driving. Ingersoll's insurance company, Auto-Owners Insurance Company, agreed to tender the full $100,000 limits of the policy to settle the claim. However, Robbins sought additional compensation from Westfield Insurance, Ken's Service's insurer, based on underinsured motorist coverage obtained for the tow truck. Ken's Service had underinsured motorist coverage in the amount of $1,000,000. The uninsured/underinsured motorist endorsement to the Westfield Insurance policy provided for underinsured coverage for the "insured," which the policy defined, in relevant part, to include "[a]nyone [besides the named insured or a family mem-

ber] 'occupying' a covered 'auto' . . . ." Further, the endorsement defined "occupying" to mean "in, upon, getting in, on, out or off."

Westfield Insurance refused to pay on the basis of its determination that Robbins was not "occupying" the vehicle at the time of the accident. Westfield Insurance then commenced this action for a determination of its obligations to Ken's Service and Robbins under the insurance contract.

Ken's Service and Robbins moved for summary disposition. They claimed that Robbins was leaning on the tow truck for balance and support when See struck him and that this occurred while he was operating the towing controls, which were located on the driver's side of the truck. Ken's Service and Robbins asserted that Westfield Insurance owed Robbins additional compensation because his injuries greatly exceeded the negligent driver's $100,000 policy limit, and Robbins was an "insured" under the terms of the underinsured motorist endorsement to the policy because he was "occupying" the insured vehicle by leaning "upon" it.

Westfield Insurance responded, arguing that Robbins was not occupying the tow truck when See struck him. Westfield Insurance asserted that Robbins clearly had both feet on the ground and had been outside the truck for several minutes when he was hit and injured. Westfield Insurance claimed that the term "upon" can only be properly interpreted in the context of the word "occupying." Westfield Insurance maintained that Robbins's physical contact with the truck needed to be "in the context" of being physically inside the truck, that his actions were not "in the context" of being an occupant, and that he therefore was not insured under the policy.

The trial court interpreted the contract to mean that Robbins could only prevail if he could demonstrate that he was "occupying" the vehicle by being "upon" it when he was struck. The trial court focused on the word "occupying" and determined that coverage depended on a person's connectedness with the activity of being a driver or passenger of the vehicle. According to the trial court, if the activity or physical contact was incidental to being a driver or passenger, then the person was occupying the vehicle and therefore would be insured. The trial court said that physical contact with the vehicle alone was not relevant. According to the trial court, the dispositive issue was whether Robbins's actions were the natural and probable result of being a driver or passenger. Thus, on the basis of the fact that Robbins was operating the vehicle as a towing machine when he was struck, the trial court concluded that his use was unrelated to being a driver or passenger of the truck. Accordingly, the trial court ruled that Robbins was not covered under the policy.

Ken's Service and Robbins now appeal.

II. INTERPRETATION OF THE CONTRACT LANGUAGE

A. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant of summary disposition.[1] The moving party must specifically identify the alleged undisputed factual issues and support his or her position with documentary evidence.[2] The nonmoving party then has the burden to produce

[1] *Tillman v Great Lakes Truck Ctr, Inc*, 277 Mich App 47, 48; 742 NW2d 622 (2007).

[2] MCR 2.116(G)(3)(b) and (4); *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

admissible evidence to establish disputed facts.[3] The court must consider all the documentary evidence in the light most favorable to the nonmoving party.[4] Further, this Court reviews de novo a trial court's interpretation of contractual language.[5]

### B. APPLICABLE LEGAL PRINCIPLES

Courts treat insurance contracts no differently than any other contract. Accordingly, we should give contractual language that is clear and unambiguous full effect according to its plain meaning unless it violates the law or is in contravention of public policy.[6] A court cannot infer the parties' "reasonable expectations" in order to rewrite a clear and unambiguous contract.[7] Even if the contractual language is poorly worded, it is not ambiguous if it " 'fairly admits of but one interpretation[.]' "[8]

The Michigan Supreme Court interpreted the identical contractual language at issue in this case in *Rednour v Hastings Mut Ins Co*.[9] In *Rednour*, an oncoming vehicle struck the plaintiff while he was changing a flat tire on the insured vehicle.[10] The plaintiff was approximately six inches away from the insured

---

[3] *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 663; 697 NW2d 180 (2005).

[4] MCR 2.116(G)(5); *Maiden*, 461 Mich at 120.

[5] *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002).

[6] *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51-52; 664 NW2d 776 (2003).

[7] *Id.* at 59-62.

[8] *Nankervis v Auto-Owners Ins Co*, 198 Mich App 262, 265; 497 NW2d 573 (1993), quoting *Raska v Farm Bureau Mut Ins Co of Mich*, 412 Mich 355, 362; 314 NW2d 440 (1982).

[9] *Rednour v Hastings Mut Ins Co*, 468 Mich 241; 661 NW2d 562 (2003).

[10] *Id.* at 242.

vehicle when the other car struck him.[11] He had loosened the lug nuts on the wheel and was moving toward the rear of the vehicle when the other car struck him.[12] The plaintiff claimed that he was an insured entitled to no-fault benefits because he was "occupying" the vehicle, as both the no-fault act and the language of the policy defined that word. Specifically, the plaintiff argued that he was " 'upon' " the vehicle because he was knocked into the insured vehicle and pinned between the two vehicles during the collision.[13]

The Michigan Supreme Court noted in *Rednour* that its prior decision in *Rohlman v Hawkeye-Security Ins Co (Rohlman I)*[14] had interpreted the meaning of "occupant" under the no-fault statute.[15] The *Rohlman I* Court declared that a person could not be an "occupant" under the no-fault act unless they were "physically inside" the vehicle when struck.[16] However, since the language of the policy broadly defined "occupying" as "in, upon, getting in, on, out or off" the insured vehicle, the *Rohlman I* Court remanded the case for this Court to consider whether the plaintiff's conduct fell under the broader definition of "occupying" stated in the policy.[17] On remand, in *Rohlman II*, this Court noted that physical contact with the insured person is required in order to be "upon" the vehicle, although the person need not be completely physically supported by the vehicle.[18]

---

[11] *Id.*

[12] *Id.*

[13] *Id.* at 249.

[14] *Rohlman v Hawkeye-Security Ins Co,* 442 Mich 520, 522, 531; 502 NW2d 310 (1993) (*Rohlman I*), citing MCL 500.3111.

[15] *Rednour,* 468 Mich at 246-247.

[16] *Rohlman I,* 442 Mich at 532; see *Rednour,* 468 Mich at 247.

[17] *Rohlman I,* 442 Mich at 522 n 1, 528 n 8, 535.

[18] *Rohlman v Hawkeye-Security Ins Co (On Remand),* 207 Mich App 344, 357; 526 NW2d 183 (1994) (*Rohlman II*) (noting that a child could be "on" a scooter by having one foot on it and another on the ground).

While the *Rednour* Court agreed with the *Rohlman II* statement that a person did not need to be physically inside the vehicle to be "upon" it, it nevertheless held that physical contact alone is insufficient to show that "the person was 'upon' the vehicle so as to be 'occupying' the vehicle."[19] Accordingly, the Court stated:

> Plaintiff was not "occupying" the vehicle under the policy definition of that term. He was outside the vehicle, approximately six inches away from it. He was not in the vehicle, nor was he getting in, on, out, or off the vehicle when he was injured.
>
> Plaintiff suggests that he was "upon" the car because he was pinned against it after being struck. Physical contact by itself does not, however, establish that a person is "upon" a vehicle such that the person is "occupying" the vehicle. The relevant dictionary definitions . . . clarify that one must be *on* or *up and on* a vehicle in order to be "upon" it. We reject the dicta in *Rohlman II* that suggests physical contact alone may be sufficient to show that the person was "upon" the vehicle so as to be "occupying" the vehicle.[20]

### C. APPLYING THE LEGAL PRINCIPLES

Here, the parties focused on the word "upon" and the meaning of that word. In *Rednour*, the Supreme Court interpreted the meaning of "upon" to mean "*on* or *up and on*." Robbins alleged that he was "upon" the truck because he had both hands on it and was leaning against the tow truck for balance and support at the moment of impact. But, as the Michigan Supreme Court stated in *Rednour*, "physical contact alone may [not] be sufficient to show that the person was 'upon' the vehicle so as to be 'occupying' the vehicle."[21] At the time of

[19] *Rednour*, 468 Mich at 250.

[20] *Id.* at 249-250.

[21] *Id.* at 250.

impact, Robbins was not in the vehicle, nor was he getting in, on, out, or off the vehicle. In fact, Robbins had been out of the vehicle for several minutes and was operating the towing controls of the truck. Thus, we conclude that the trial court did not err by concluding that Robbins was not "occupying" the vehicle when he sustained bodily injury.

We affirm.

SAWYER, P.J., concurred with WHITBECK, J.

M. J. KELLY, J. (*dissenting*). Because I believe that the trial court erred in its interpretation of the word "upon" in the subject underinsured motorist insurance policy, I would reverse its decision to grant summary disposition in favor of plaintiff, Westfield Insurance Company, and instead grant summary disposition in favor of defendants, Ken's Service and Mark Robbins. Therefore, I must respectfully dissent.

Robbins worked for Ken's Service as a tow truck driver. On the evening of the accident, Robbins was sent to tow a police vehicle out of a ditch. After pulling his tow truck to the shoulder of the highway, Robbins activated the emergency lights, got out of the tow truck, hooked cables to the police cruiser, and walked back to the truck's bed. He then began the process of pulling the police vehicle from the ditch by activating the levers on a control panel located on the driver's side of the truck. He averred in an unrebutted affidavit that he was leaning on the tow truck for balance and support with both his hands touching the truck; his right hand was on the control panel, and with the left he grasped the truck's railing. It was then that a passing motorist struck him and caused him serious injuries.

At issue is Robbins's entitlement to underinsured motorist coverage under Westfield's policy insuring the tow truck. Under the policy, an "insured" is entitled to uninsured or undersinsured motorist coverage resulting from "bodily injury" caused by "an accident." The policy provides that, if the named insured is an individual, the insureds are the "Named Insured and any 'family members' " as well as anyone "else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' "[1] Thereafter, the policy defines "occupying" as "in, upon, getting in, on, out or off." We are asked to determine whether, under the definitions that Westfield provided in its insurance policy, Robbins was "upon" the tow truck at the time of the accident.

As noted by the majority, our Supreme Court has interpreted this identical language. See *Rednour v Hastings Mut Ins Co*, 468 Mich 241; 661 NW2d 562 (2003). In *Rednour*, the plaintiff was struck by an oncoming vehicle while changing a flat tire on the insured vehicle. *Id.* at 242. The plaintiff was approximately six inches away from the insured vehicle when he was struck by the other car. He had loosened the lug nuts on the wheel and was moving toward the rear of the vehicle when he was hit. *Id.* The plaintiff claimed that he was an insured entitled to no-fault benefits because he was "occupying" the vehicle, as defined by both the no-fault act and the language of the policy. He argued that he was "upon" the vehicle because he was

---

[1] Though not fully developed in the circuit court, Ken's Service—a business—was listed by the Westfield policy as "An Individual" with the result being that his family members, who presumably did not drive this large, commercial tow truck, would have been covered for these injuries regardless of whether they were "upon" the vehicle and yet Robbins, the employee who actually drove the tow truck on a regular basis and as part of his employment duties, was not. This is not an issue before us on appeal but remains a conundrum.

pinned between the two vehicles during the collision. *Id.* at 249. The Court noted that it had already interpreted the meaning of "occupant" under the no-fault statute and declared that a person could not be an "occupant" *under the no-fault act* unless they were " 'physically inside' " the vehicle when struck. See *id.* at 247, citing *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 531-532; 502 NW2d 310 (1993) (*Rohlman I*). However, because the language of the policy in its case, like the policy here, broadly defined "occupying" as " 'in, upon, getting in, on, out or off' " the insured vehicle, *Rohlman I*, 442 Mich at 528 n 8, the Court in *Rohlman I* remanded the matter to this Court to consider whether the plaintiff's conduct fell under the broader definition of "occupying" stated in the policy. *Id.* at 535.

On remand, this Court noted that physical contact with the insured vehicle is required to be "upon" the vehicle, although the person need not be completely physically supported by the vehicle. *Rohlman v Hawkeye-Security Ins Co (On Remand)*, 207 Mich App 334, 357; 526 NW2d 183 (1994) (*Rohlman II*) (noting that a child could be "on" a scooter by having one foot on it and another on the ground). While the *Rednour* Court agreed with the *Rohlman II* statement that a person did not need to be physically inside the vehicle to be "upon" it, the Court nevertheless held that physical contact alone is insufficient to show that "the person was 'upon' the vehicle so as to be 'occupying' the vehicle." *Rednour*, 468 Mich at 250. The Court explained: "The relevant dictionary definitions . . . clarify that one must be *on* or *up and on* a vehicle in order to be 'upon' it." *Id.*

More recently still, this Court analyzed the identical contractual language in *Bledsoe v Auto Owners Ins Co*

*(On Remand),* unpublished opinion per curiam of the
Court of Appeals, issued December 4, 2003 (Docket No.
236735). There the plaintiff's foot was run over by a
truck while he was stopped at a toll booth to pay the
toll. While he was leaning on the insured vehicle and
bending over to locate some dropped change, the truck
attempted to pass him and ran over his foot. *Id.* at 2.
This Court noted that the insurance policy provided
greater coverage than that guaranteed under the no-
fault act. *Id.* After distinguishing *Rednour,* the Court in
*Bledsoe* concluded that the plaintiff was insured be-
cause he was "upon" the truck:

> In the instant case, plaintiff testified that he was
> balancing himself with one hand *on the step of the insured
> truck* when the accident occurred. Even under the *Red-
> nour . . .* Court's restricted definitions, plaintiff was, ac-
> cording to his testimony, "upon" the truck at the time of
> the accident. We believe that a commonsense interpreta-
> tion of the term "upon" leads to this conclusion. Moreover,
> the Supreme Court in *Rednour . . .* indicated (1) that one
> must be "on" a vehicle to be "upon" it and (2) that a
> dictionary is an appropriate reference tool in giving mean-
> ing to the terms at issue here. See [*Rednour,* 468 Mich at
> 250]. *Random House Webster's College Dictionary* (1997)
> lists the following as the first definition of "on": "so as to be
> or remain supported by or suspended from." Plaintiff
> testified that he was balancing himself with one hand on
> the step of the truck when the accident occurred. If the
> factfinder were to believe plaintiff's testimony, then (1)
> plaintiff clearly was being "supported by" the truck, (2) he
> therefore was "occupying" the vehicle under the terms of
> the Auto Owners' policy, and (3) the parked vehicle exclu-
> sion in [the] policy does not apply. The trial court properly
> denied summary disposition to Auto Owners with respect
> to the issue of PIP [personal protection insurance] benefits.
> [*Id.* at 3.]

Although not binding precedent, I find this reasoning
persuasive. Robbins's unrebutted affidavit indicates

that he was leaning on the tow truck for balance and support at the time he was struck by the passing automobile. Therefore, like the plaintiff in *Bledsoe*, he was "on" ("supported by") or "upon" and thus "occupying" the vehicle in accordance with the policy. And because there is no evidence to rebut that Robbins was being supported by the vehicle, the trial court should have granted summary disposition in favor of defendants.

If Westfield wanted a more restrictive definition for "occupying," it could have chosen to insert a different definition into its policy. As it is, the words it chose were "in, upon, getting in, on, out or off." And, because the definition of "on" is "so as to be or remain supported by or suspended from," Robbins plainly demonstrated that he comes within the policy's definition of "occupying" and coverage should have been afforded him.

For this reason, I respectfully dissent.