RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0169p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

STRYKER CORPORATION and
HOWMEDICA OSTEONICS, CORPORATION,
*Plaintiffs-Appellees/Cross-Appellants*
(11-1116 & 11-1174),

*v.*

NATIONAL UNION FIRE INSURANCE CO. OF
PITTSBURGH, PA,

    *Defendant,*

XL INSURANCE AMERICA, INC.,
    *Defendant-Appellee* (11-1116),

TIG INSURANCE COMPANY,
    *Defendant-Appellant* (11-1116),
    *Defendant-Appellant/Cross-Appellee*
    (11-1174).

> Nos. 11-1116/1174

Appeals from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:05-cv-51—Robert Holmes Bell, District Judge.

Argued: April 10, 2012

Decided and Filed: June 5, 2012

Before: GUY, COLE, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Carlos Del Carpio, MECKLER BULGER TILSON MARICK & PEARSON LLP, Chicago, Illinois, for Appellant. Jonathan D. Hacker, O'MELVENY & MYERS LLP, Washington, D.C., David J. Gass, MILLER JOHNSON, Grand Rapids, Michigan, for Appellees. **ON BRIEF:** Carlos Del Carpio, MECKLER BULGER TILSON MARICK & PEARSON LLP, Chicago, Illinois, Carole D. Bos, BOS & GLAZIER, PLC, for Appellant. Jonathan D. Hacker, O'MELVENY & MYERS LLP, Washington,

D.C., Michael W. Betz, David J. Bloss, BLOSS BETZ, Grand Rapids, Michigan, Paul R. Koepff, CLYDE & CO., New York, New York, David J. Gass, D. Andrew Portinga, J. Michael Smith, MILLER JOHNSON, Grand Rapids, Michigan for Appellees.

––––––––––––––

**OPINION**

––––––––––––––

COLE, Circuit Judge. As part of a large, consolidated coverage action, medical device manufacturer Stryker Corporation ("Stryker") filed suit against TIG Insurance Company ("TIG"), which had issued an excess insurance policy to Stryker. Stryker asserts that TIG is potentially liable for sums stemming from two separate actions relating to expired artificial knee joints manufactured by Stryker. TIG argues that prior rulings render Stryker's claims moot as to the TIG policy, and that TIG was not bound by the district court's rulings in the companion case. The district court held that the potential liability under the TIG policy negates TIG's mootness argument. For the reasons set out below, we AFFIRM in part, REVERSE in part, and REMAND the case for further proceedings consistent with this opinion and the opinion in the companion case.

## I. BACKGROUND[1]

### A. *The TIG Excess Policy*

TIG issued an excess policy to Stryker for the 2000 policy year ("the TIG policy"). The policy provided $25 million in coverage per occurrence and in the aggregate. Coverage attached above the underlying umbrella policy, issued by Winterthur International America (now known as XL Insurance America, Inc.) and containing a limit of liability of $15 million ("the XL policy"). The TIG policy obligated TIG to cover Stryker's "ultimate net loss in excess of all underlying insurance and only after all underlying insurance has been exhausted by the payment of the limits

––––––––––––––

[1]For a complete factual background of the *Stryker I* and *II* cases, *see Stryker Corp. et al. v. XL Insurance America, Inc*, Case Nos. 09-2332 & 10-2383 ("the companion case"). This opinion discusses only those facts directly related to the TIG policy.

of such insurance . . . ."  In addition, the TIG policy states "[t]he Definitions, Terms, Conditions, Limitations, and Exclusions of the 'first policy of underlying insurance' . . . apply to this coverage unless they are inconsistent with the provisions of this policy . . . ."

*B.  The Stryker II Litigation*

Stryker filed suit against XL in the Western District of Michigan on October 4, 2001, seeking defense and indemnification for claims against Stryker related to expired Uni-Knees under the XL policy ("*Stryker I*").  Soon after, Pfizer brought suit against Stryker in the Southern District of New York, alleging that Stryker was obligated to indemnify Pfizer against claims brought against Pfizer related to the Uni-Knees, pursuant to the stock and asset purchase agreement between the companies ("the Agreement").  That court eventually granted summary judgment in favor of Pfizer, holding that Stryker was required to indemnify Pfizer under the Agreement.  *See Pfizer Inc., v. Stryker Corp.,* 348 F. Supp. 2d 131, 159 (S.D.N.Y. 2004).  When XL denied coverage for that claim as well, Stryker filed suit against its primary and excess insurers, seeking coverage relating to Stryker's obligations to Pfizer pursuant to the asset purchase agreement between Pfizer and Stryker.  In its complaint, Stryker asserted breach of contract claims against XL for failing to defend and indemnify under the XL policies, and sought a declaratory judgment that XL was liable under the XL policy to indemnify Stryker for its losses.  Stryker also sought a declaratory judgment against TIG, stating that

> Pfizer's claim against Stryker for indemnification in the *Pfizer v. Stryker* case, when added to other defense and indemnity payments made by Plaintiffs for the Underlying Claims and Actions, will exhaust the limits of the [XL policy].  TIG has an obligation to cover any loss in excess of the primary umbrella policies.

On August 29, 2008, the district court issued an opinion and order, holding that XL was liable for Stryker's liabilities stemming from the Pfizer judgment.  The district court also granted a declaratory judgment with regard to TIG, stating "[a]s the Court has determined that Plaintiffs are entitled to summary judgment with respect to [XL] and the

2000 TIG Excess Policy follows the form of the 2000 [XL] Policy, it necessarily follows that Plaintiffs are entitled to summary judgment against TIG." TIG filed a motion for reconsideration, arguing that it could not be subject to issue preclusion related to any findings in the *Stryker I* ruling because it was not a party to that litigation. The district court denied the motion, holding that it had already rejected TIG's arguments on preclusion, but issued an amended judgment to clarify certain portions of the original opinion. *Stryker Corp. v. National Union Fire Ins. Co of Pittsburgh, PA et al.*, No. 1:05-cv-051-RHB, 2009 WL 56292, at *12 (W.D. Mich. Jan. 8, 2009) (*"the Stryker II* Coverage Opinion").

XL subsequently settled the Pfizer claims directly with Pfizer, and sought a ruling from the district court that this settlement satisfied its obligations under *Stryker II*. The district court granted XL's motion. Stryker sought pre-judgment interest from XL relating to the settlement, which was denied, and the district court entered a final judgment. TIG then moved to amend the final judgment to remove the declaratory judgment ruling against it, arguing that the district court's ruling that XL was responsible for both the *Stryker I* judgment and the Pfizer settlement made it impossible to subject TIG to liability, and thus mooted the declaratory judgment ruling. The district court denied this motion and issued an Addendum to the Final Judgment that clarified that all previous orders were still in effect.

TIG appealed the district court's rulings on issue preclusion, as well the district court's ruling that the case was not moot as to TIG. Stryker cross-appealed on the denial of pre-judgment interest stemming from the Pfizer settlement.

## II. ANALYSIS

### A. *General Insurance Principles and Standard of Review*

Michigan law, which governs the substantive issues in the case, treats insurance contracts in the same manner as other contracts. *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). Therefore, a court should "give contractual language that is clear and unambiguous full effect according to its plain meaning unless it violates the law or is in

contravention of public policy." *Westfield Ins. Co. v. Ken's Service*, No. 300941, 2012 WL 752038 (Mich. Ct. App. Mar. 8, 2012). "Under Michigan law, exclusion clauses and ambiguous provisions in insurance policies are strictly construed against the insurer." *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 455 (6th Cir. 2003).

A declaratory judgment may be issued by the district court to "declare the rights and other legal relations of any interested party seeking such declaration." *Severe Records, LLC v. Rich*, 658 F.3d 571, 580 (6th Cir. 2011) (quoting 28 U.S.C. § 2201). We review de novo the district court's grant of summary judgment to Stryker on its declaratory judgment cause of action. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 453 (6th Cir. 2001). "Summary judgment is proper if the materials in the record 'show [ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 723 (6th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).

*B. Mootness*

TIG argues that Stryker's case against it is moot in light of the district court's rulings on the XL policy. An appeal is moot "if events have taken place during the pendency of the appeal that make it impossible for the court to grant any effectual relief whatever." *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (internal quotation marks and citations omitted). In two separate opinions, the district court held that XL was liable for the entire amount of Stryker's obligations to Pfizer, as well as the entire amount of Stryker's liability and costs associated with tort claims brought directly against Stryker. Those two categories, TIG argues, represent all of the claims at issue in *Stryker I & II*, leaving no basis for a court to grant relief to Stryker as to TIG.

TIG's argument is grounded entirely in the district court's rulings on the exhaustion of the XL policy. For the reasons set out fully in the companion case, the XL policy can be exhausted by the payment of the Pfizer settlement. *See* Slip Op. at pgs. 11–12. To the extent that the policy is exhausted, TIG may be liable for amounts in

excess of the limits of the XL policy. Thus, the case is not moot based on the district court's rulings on the exhaustion of the XL policy.**2**

TIG also argues that the case is moot because *Stryker II* concerns only costs associated with Pfizer, and XL has entirely satisfied the Pfizer claim when it settled with Pfizer. As a result, according to TIG, there are no remaining claims in *Stryker II* that could generate liability for TIG. TIG misreads the district court's opinion, as well as the underlying complaint in *Stryker II*. TIG is correct that *Stryker II,* as to XL, relates only to the Pfizer claim. But as to TIG, Stryker's complaint encompasses *any* claim which would be in excess of the XL policy, not simply the Pfizer claim. Because the complaint, and the corresponding relief granted by the district court, contemplates imposing liability on TIG related to the *Stryker I* claims, this appeal is not moot as to TIG.

*C. Preclusion*

TIG also argues that it may not be precluded from arguing on remand that it is not bound by the coverage rulings in *Stryker I* (and, by extension, our rulings in the companion case). Preclusion consists of two conceptually distinct doctrines: claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).**3** "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). "Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (quoting *New Hampshire*, 532 U.S. at 748-49).

---

**2**We need not reach TIG's argument that the district court's Addendum to the Final Judgment was an inconsistent ruling and/or an advisory opinion. As we are remanding to the district court for reconsideration the exhaustion of the XL policy, we are necessarily vacating the portion of the district court's rulings that TIG argues is inconsistent with the declaratory judgment, as well the portion of declaratory judgment that TIG argues is advisory.

**3**Contrary to TIG's contention, "[t]he preclusive effect of a federal-court judgment is determined by federal common law." *Sturgell*, 553 U.S. at 891.

As a threshold matter, Stryker argues that TIG's preclusion arguments are waived. According to Stryker, TIG shifted gears in its motion for reconsideration of the *Stryker II* Coverage Opinion and argued for the first time that it was not bound by the *Stryker I* Coverage Opinion. Relying on *Scottsdale Insurance Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008), Stryker argues that an issue raised for the first time in a motion for reconsideration is not preserved for appeal. In the motion for reconsideration, however, the district court held that it had rejected TIG's estoppel arguments in its original ruling on declaratory judgment. Thus, TIG did bring preclusion arguments in the court below, and the issue is preserved for review.

Preclusion bars some, but not all, of TIG's coverage arguments. TIG was never a party in *Stryker I*, nor did TIG ever attempt to intervene in the *Stryker I* action. However, TIG did attempt to file a separate declaratory judgment action against Stryker for the purpose of asserting that it had no liability for the *Stryker I* judgment. *See TIG Ins. Co. v. Stryker Corp. et al.*, Case No. 1:09-cv-156-RHB, 2009 WL 3255550 (W.D. Mich. Oct. 7, 2009) ("*Stryker III*"). The district court dismissed the case, and TIG never appealed the dismissal. Therefore, claims raised by TIG in the *Stryker III* action are subject to claim preclusion and TIG is barred from relitigating them. For example, TIG notes in its brief that it would seek to litigate the allocation of losses between the 1999 and 2000 policy periods. But TIG itself raised that issue in *Stryker III*, received an adjudication on the merits from the district court, and then never appealed the district court's ruling. *Id.* at * 4. Thus, TIG may not raise these issues again on remand.

With regard to potential defenses not previously raised by TIG, issue preclusion does not apply. In order for issue preclusion to apply to those rulings, the party seeking estoppel must show:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 601 (6th Cir. 2012) (internal quotation marks and citations omitted). The first three prongs of the issue preclusion test clearly can be met. Because the TIG policy "follows form" to the XL policy, the *Stryker I* coverage rulings are directly controlling on the interpretation of the TIG policy, and therefore the rulings in *Stryker I* are precisely the same issues that would be litigated under the TIG policy. The *Stryker I* coverage rulings were at the heart of the district court's determination in *Stryker I* (as opposed to in the alternative), and resulted ultimately in a final judgment.

The fourth prong cannot be met, because TIG is not in privity with XL. *See United States v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007) ("Judgments are preclusive only as to parties and their privies.") (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). "Privity is limited to 'a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented.'" *Id.* (quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir. 1992)). The district court concluded that privity existed by virtue of the "follow-form" nature of the TIG policy, as well as TIG's assertion that coverage under the TIG policy was tied to coverage under the XL policy. In other words, because the interpretation of the TIG policy was tied to the interpretation of the XL policy, XL "adequately represented" TIG's interests. However, "adequate or 'virtual' representation . . . requires an express or implied *legal* relationship in which parties to the first suit are *accountable* to non-parties who file a subsequent suit raising identical issues." *Becherer v. Merrill Lynch, Pierce, Fenner,& Smith, Inc.*, 193 F.3d 415, 423 (6th Cir. 1999) (en banc) (internal quotation marks and citations omitted) (emphasis in original); *see also Sturgell*, 553 U.S. at 894-95 (defining adequate representation to include class action scenarios and "suits brought by trustees, guardians, and other fiduciaries"). At no point did TIG and XL enter into a relationship in which XL was accountable to TIG for the litigation

choices it was making in *Stryker I*. Accordingly, TIG is not in privity with XL, and is not precluded from raising its own defenses to coverage on remand.[4]

*D. Stryker's Cross-Appeal*

Stryker cross-appealed the district court's denial of its motion for pre-judgment interest on XL's Pfizer settlement. Stryker stated in its brief that it was declining to pursue this appeal against TIG. Nevertheless, Stryker asserts that any pre-judgment interest that it is not able to recoup from XL in light of the panel's rulings in the companion case should be borne by TIG as an excess insurer. This is incorrect. Stryker's argument is premised on the notion that it has a right to pre-judgment interest as compensation for the delays in paying claims. However, "[t]he purpose of the penalty interest statute is to penalize insurers for dilatory practices in settling meritorious claims, not to compensate a plaintiff for delay . . . ." *Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 594 N.W.2d 74, 76 (Mich. Ct. App. 1998), *rev'd on other grounds by Griswold Props., LLC v. Lexington Ins. Co.*, 741 N.W.2d 549, 555 (Mich. Ct. App. 2007). Stryker has not alleged that TIG has engaged in "dilatory practices" with regard to paying claims. Indeed, Stryker currently argues that TIG has no obligation to Stryker at all. Therefore, Stryker has a right to pre-judgment interest from XL, and only XL. Thus, Stryker may not attempt on remand to hold TIG liable for any pre-judgment interest that has been imposed thus far in this case.

III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's ruling that the case is not moot, REVERSE the district court's ruling that TIG is precluded from raising coverage defenses on remand, and REMAND the case for further proceedings in light of this opinion.

---

[4]We note, however, that the TIG policy follows-form to the underlying XL policy, and incorporates all the same terms and conditions of the XL policy. Though we conclude that TIG is not precluded from raising coverage defenses on remand, we do not mean to suggest that the district court should interpret the portion of the TIG policy that incorporates the XL language differently from the interpretation of the XL policy itself. The TIG policy contains other provisions that do not incorporate language from the XL policy, and those provisions might generate coverage defenses that are unique to the TIG policy.